S09A1453. KRAUSE v. THE STATE.
S09A1454. CHESSER v. THE STATE.
(691 SE2d 211)

NAHMIAS, Justice.

In 2003, a Brantley County jury convicted Krystle Lynn Krause and Jordan Chesser of malice murder and other crimes in connection with the shooting death of Christopher Carver, and the trial court sentenced them to life in prison. Krause and Chesser raise a variety of challenges on appeal. For the reasons that follow, we affirm the convictions, except for Chesser's conviction for felony murder, which is vacated by operation of law.[1]

### Sufficiency of the Evidence

1. The evidence at trial, viewed in the light most favorable to the verdict, showed as follows. On June 26, 2002, Krause, who was 17,

---

[1] Krause and Chesser committed their crimes on June 26, 2002. They were jointly indicted on August 5, 2002, and on September 19, 2003, a Brantley County jury convicted them on all charges at the conclusion of a four-day trial. The trial court sentenced the defendants to life in prison for malice murder, life in prison for felony murder, and five years consecutive for possession of a firearm during commission of a felony. Krause filed a motion for new trial on October 1, 2003, and Chesser filed a motion for new trial on October 15, 2003. Almost five years later, the trial court conducted hearings on Krause and Chesser's motions on May 22, 2008, and August 4, 2008, respectively. The trial court denied Krause's motion on June 17, 2008, but amended her sentence on June 18, 2008, to reflect that the felony murder conviction was vacated by operation of law. See *Martinez v. State*, 283 Ga. 122, 123 (657 SE2d 199) (2008). Krause filed a timely notice of appeal the same day. Chesser's motion was denied on August 25, 2008. Chesser had already filed a premature notice of appeal on August 19, 2008. See *Hall v. State*, 282 Ga. 294, 295 (647 SE2d 585) (2007) (treating premature notice of appeal as effective upon entry of order denying motion for new trial). The cases were docketed in this Court on May 14, 2009, and submitted for decision on the briefs.

was staying with her boyfriend Chesser, who was 19, at the Brantley County trailer that Krause shared with her father. Krause's father was known locally as "Pill Bill," and Krause sold drugs for him out of the trailer. On the day of the crimes, Krause's father was visiting family in Florida.

The victim, Carver, lived two driveways down the road, and he was friends with Krause's father. On the day of the crimes, he was working on Krause's car. He finished his work and left, but he returned to the trailer that afternoon to buy some OxyContin. Krause refused, however, because Carver had no money to pay for the drugs. Carver then left.

Shortly thereafter, Krause discovered that her father's OxyContin was missing, and she suspected that Carver had taken it. Krause and Chesser then devised a plan to lure Carver back to the trailer and kill him. They discussed this plan in the presence of two friends, 17-year-old Alyssa Buchan and her boyfriend, 19-year-old James Lawrence Martino.

Krause called Carver and told him that something was still wrong with her car. Carver returned to the trailer, and Krause confronted him about taking the missing OxyContin, which he denied. Despite the accusation, Carver agreed to work on Krause's car in the workshop behind his house. Carver drove back to his place, and Krause and Chesser followed him a few minutes later after changing into old clothes they could burn later and arming themselves with a small automatic pistol and a miniature baseball bat. They beat Carver savagely with the bat and then killed him with a single gunshot to the back of the neck.

Krause and Chesser had difficulty getting Carver's body into the trunk of Krause's car. Krause ran back to the trailer to enlist the help of Buchan and Martino, but they refused. Krause ran back to the Carver residence to assist Chesser, and they eventually succeeded in dragging his body to the car and heaving it into the trunk. They drove to a remote area, where they dumped the body and covered it with tree branches.

As they were leaving, Krause's car got stuck in the muddy sand. Krause and Chesser walked to a nearby gas station, where they persuaded two young men to help them pull the car out in exchange for a marijuana cigarette. The two men asked their father for help, and after considerable effort, they freed the vehicle from the muck. Krause and Chesser returned to the trailer, put their clothes in the washing machine, took some drugs, and went to sleep.

After refusing to help dispose of the body, Buchan and Martino had left the trailer and gone to Buchan's mother's house. She then drove them to see Carver's stepdaughter, Sarah Bagley, who had recently been Buchan's roommate. Buchan told Bagley what had

happened, and Bagley called 911. Buchan told the 911 operator that Krause admitted shooting Carver. Krause and Chesser were arrested without incident a short time later.

Krause and Chesser each challenge the sufficiency of the evidence to support their convictions, disputing principally which of them fired the fatal shot. Having reviewed the record, we conclude that the evidence adduced at trial, which is summarized above, was sufficient to authorize a rational jury to find Krause and Chesser guilty beyond a reasonable doubt of the crimes for which they were convicted, directly or as a party to the crimes. See *Jackson v. Virginia*, 443 U. S. 307, 318-319 (99 SC 2781, 61 LE2d 560) (1979). In addition, questions as to the reasonableness of alternative hypotheses were for the jury to decide, *Julius v. State*, 286 Ga. 413 (687 SE2d 828) (2010), and the evidence was sufficient to enable the jury to reject every alternative hypothesis of the crimes save that of the guilt of Krause and Chesser. See OCGA § 24-4-6 ("To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused.").

### *Krause's Additional Claim*

2. Krause raises only one other claim. She contends that the trial court committed reversible error when it allowed Chesser, over her counsel's hearsay objection, to play for the jury a tape of the 911 call that Bagley made on the night of the crimes, because the sole purpose was to allow the jury to hear the statement that Krause admitted killing Carver. Krause insists that the 911 tape was pure hearsay and argues that its admission was not harmless because the case against her was circumstantial and the 911 tape was critical to lend credence to Chesser's claim that Krause was the shooter.

The trial court did not err, however, in admitting the tape of the 911 call. Bagley, Buchan, and the 911 operator can all be heard on the 911 tape, and all three testified at trial and were subject to cross-examination. On the 911 tape, Buchan can be heard saying that Krause told her that Krause shot Carver. However, at trial, Buchan testified, "I don't believe that I said that she said she shot him." Chesser reminded her of her statement on the 911 call, but Buchan did not change her testimony. OCGA § 24-9-83 provides in relevant part as follows:

A witness may be impeached by contradictory statements previously made by him as to matters relevant to his testimony and to the case. Before contradictory statements may be proved against him, unless they are written state-

ments made under oath in connection with some judicial proceedings, the time, place, person, and circumstances attending the former statements shall be called to his mind with as much certainty as possible. . . .

Accordingly, the trial court did not err in allowing Chesser to play the 911 tape to impeach Buchan's testimony with her prior inconsistent statement.

### Chesser's Additional Claims

3. Chesser claims that the trial court erred in removing a juror for cause after jury selection over his objection. The juror in question did not speak up in voir dire when asked if he was related to either defendant. Krause and Chesser were able to agree on their jury strikes, and the trial court sent the jury home for the evening. The next day, before opening statements, the trial court received a note saying that this juror had discovered, in a discussion the previous evening with one of his relatives, that he was previously related to Chesser by marriage. Krause moved to strike the juror for cause, and Chesser objected on the ground that the juror was not closely enough related to Chesser to be struck for cause. See OCGA §§ 15-12-135 (a) ("All trial jurors in the courts of this state shall be disqualified to act or serve in any case or matter when such jurors are related by consanguinity or affinity to any party interested in the result of the case or matter within the sixth degree as computed according to the civil law. Relationship more remote shall not be a disqualification."), 15-12-163 (b) (4) (authorizing removal for cause where "the juror is so near of kin to the prosecutor, the accused, or the victim as to disqualify the juror by law from serving on the jury"). The trial court ultimately struck the juror and seated an alternate.

Chesser claims that removal was improper, because the juror was not related to him by marriage "within the sixth degree as computed according to the civil law." We need not delve into a genealogical analysis, however, because the trial court properly struck the juror for reasons other than his degree of kinship with Chesser. The juror failed to respond accurately about a material issue in voir dire, and he also indicated that he had discussed the case with a family member during an evening recess, despite the trial court's instructions not to discuss the case with anyone. Removal of a juror lies in the discretion of the trial court. *State v. Arnold*, 280 Ga. 487, 489 (629 SE2d 807) (2006). There was no abuse of discretion here.

4. Chesser contends that the trial court erroneously permitted the State to place his character in issue when it allowed the State to introduce evidence about the use of a bat during the crimes and

when it allowed Krause to introduce evidence that a month before the crimes, Chesser pushed Krause's head through a plate glass window, slapped her, and kneed her in the chest. Chesser did not raise a bad character objection to the introduction of the bat evidence at trial, however, so he has waived appellate review of this issue. See *Hicks v. State*, 285 Ga. 386, 389 (677 SE2d 111) (2009).

Turning to the domestic violence evidence, we have long recognized that "[e]vidence that is otherwise relevant and material to the issues in a criminal case does not become inadmissible simply because it incidentally puts a defendant's character or reputation into evidence." *Daniels v. State*, 252 Ga. 30, 32 (310 SE2d 904) (1984). In light of the overwhelming evidence of his involvement in Carver's murder, Chesser's strategy at trial was to minimize his participation, point the finger at Krause as the shooter, and otherwise mitigate his culpability by attempting to show that he merely assisted the truly guilty party, Krause, out of his undying love for her. The domestic violence evidence was introduced by Krause, not the State. Its purpose was not to show that Chesser had a propensity for violence and therefore acted in conformity therewith on the date of the crimes. Instead, it was designed to undercut his claims that Krause was the leader, that he was a mere bystander or assistant, and that the motivation for his involvement was his feelings of tenderness for Krause, whom instead he had beaten a month earlier. Thus, the domestic violence evidence was introduced for a relevant and material purpose, and despite the fact that it reflected poorly on Chesser's character, the trial court did not abuse its discretion in admitting this evidence over his objection.

5. Chesser maintains that the trial court erred in denying his request to be tried separately from Krause. In a murder case where the death penalty is not sought, the trial court has broad discretion to grant or deny a motion for severance. See OCGA § 17-8-4; *Shelton v. State*, 279 Ga. 161, 162 (611 SE2d 11) (2005). In ruling on a severance motion, the trial court should consider: (1) the likelihood of confusion of the evidence and law; (2) the possibility that evidence against one defendant may be considered against the other defendant; and (3) the presence or absence of antagonistic defenses. See *Griffin v. State*, 273 Ga. 32, 33 (537 SE2d 350) (2000). It is not enough for the defendant to show that he or she would have a better chance of acquittal at a separate trial or that the evidence against a co-defendant is stronger. See id.; *Kelly v. State*, 267 Ga. 252, 253 (477 SE2d 110) (1996). Rather, the defendant must show clearly that a joint trial will prejudice his or her defense, resulting in a denial of due process. See *Howard v. State*, 279 Ga. 166, 171 (611 SE2d 3) (2005).

As the trial court implicitly found in denying the severance

motion, the joint trial did not present a significant likelihood of confusion of the evidence and law, or the possibility that evidence introduced against Krause might be improperly considered against Chesser. There were only two defendants, the law applicable to each was substantially the same, and the evidence at trial showed that Chesser and Krause acted together in killing the victim. Chesser has not shown that presentation of the evidence against Krause led to juror confusion. Moreover, Chesser's own actions directly implicated him in the murder. He told the police the location of the body and admitted shooting the victim, and he also discussed killing the victim and how to dispose of the body in front of two witnesses who would have been equally available to testify against him at a separate trial.

It is true that Krause and Chesser raised antagonistic defenses, in the sense that each of them pointed to the other as the shooter and the leader in killing Carver and disposing of his body. That alone, however, is insufficient to require severance, because "unless there is a showing of resulting prejudice, antagonistic defenses do not automatically require a severance." *Green v. State*, 274 Ga. 686, 688 (558 SE2d 707) (2002). Accord *Zafiro v. United States*, 506 U. S. 534, 538 (113 SC 933, 122 LE2d 317) (1993) ("Mutually antagonistic defenses are not prejudicial per se."). Chesser has shown no specific prejudice from the presentation of the antagonistic defenses.

Instead of organizing his argument around the three factors dictated by our case law, Chesser simply contends that separate trials would have avoided what he views as unnecessary problems that arose at the joint trial. He points to the removal of the juror related to him and the introduction of the domestic violence evidence, both of which he contends would not have occurred if he were being tried separately. But that is incorrect. As the State correctly notes, the removal of the juror had nothing to do with the fact that Chesser and Krause were tried together. Even if he had been tried separately, the juror would still have been subject to removal once the trial court discovered that the juror failed to respond accurately in voir dire and disregarded the court's instructions not to discuss the case with anyone during the overnight recess. Similarly, the domestic violence evidence, which was introduced to contradict Chesser's sympathetic portrayal of his role in the murder, would have been admissible for the same reason at a separate trial.

Finally, Chesser asserts that emotions ran high at the joint trial, and as a result, jurors had to be placed under uniformed guard to keep them from interacting with spectators and the trial had to be stopped several times for sidebars about allegations of witness tampering and intimidation. But use of security measures to prevent dangerous or disruptive behavior that threatens the conduct of a fair and safe trial is within the trial court's discretion, see *Young v. State*,

269 Ga. 478, 479 (499 SE2d 60) (1998), and Chesser has failed to establish any abuse of that discretion here. As for the allegations of witness tampering and intimidation, Chesser fails to mention that they involved his own parents' speaking to witnesses outside the courtroom who had not yet testified. The trial court addressed the allegations by questioning Chesser's parents, separating the witnesses, and admonishing them not to discuss their testimony with anyone. Chesser fails to explain how severance would have made any difference, given that the same witnesses would have been called to testify at a trial of Chesser alone. For these reasons, the trial court did not err in denying Chesser's request for severance.

6. Chesser asserts that Buchan's spontaneous statement on the witness stand that he and Krause talked about killing the victim violated his rights under the Confrontation Clause in violation of *Bruton v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968), because it inculpated Chesser and was admitted before either defendant had decided whether or not to testify at trial. Chesser did not object to this testimony at trial, and the issue has therefore been waived. See *Hicks*, 285 Ga. at 389. In any event, Chesser's contention is meritless. *Bruton* applies only to a co-defendant's statement inculpating the defendant at a joint trial where the co-defendant elects not to testify. See *Nelms v. State*, 285 Ga. 718, 721 (681 SE2d 141) (2009). Krause did elect to testify at trial and was subject to cross-examination by Chesser. Consequently, *Bruton* is inapplicable.

7. Chesser contends that the trial court erred in admitting his statement to the police following his arrest. He asserts that he was obviously intoxicated, and the police therefore violated his rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966). We disagree.

The trial court conducted a hearing pursuant to *Jackson v. Denno*, 378 U. S. 368, 380 (84 SC 1774, 12 LE2d 908) (1964), to determine the voluntariness and admissibility of Chesser's statement. There was evidence that Chesser was drinking and consuming drugs in the hours leading up to his arrest and that he appeared tired and fatigued when he spoke with police. However, detectives testified that Chesser did not appear to be under the influence of any intoxicants, appeared to be speaking freely and voluntarily, and was responsive to all questions. The trial court also reviewed a videotape of the interview.

Under these circumstances, the trial court was authorized to conclude that Chesser knowingly and intelligently waived his *Miranda* rights and voluntarily gave the statement in question. See *Bergeson v. State*, 272 Ga. 382, 383 (530 SE2d 190) (2000); *Columbus v. State*, 270 Ga. 658, 663 (513 SE2d 498) (1999). Accordingly, the trial court did not err in admitting the statement.

8. Finally, Chesser charges that the State deprived him of due process by failing to preserve material evidence in the form of a bat photographed in the vehicle used to transport the victim's body to the dump site. Chesser claims that with access to the bat, he might have been able to show that it was only a plastic toy bat, thereby demonstrating his lack of intent to injure Carver, or testing might have revealed a lack of DNA on the bat, which would have shown that Carver's head wounds were not inflicted by Chesser. Chesser contends the State's bad faith is demonstrated by its decision to focus on the bat evidence at trial, claiming that Chesser "armed" himself with it before going to Carver's place, despite the clear evidence that the cause of death was a gunshot wound, not being struck by a bat. The State's failure to preserve the bat evidence is regrettable, but Chesser has failed to show that it violated his due process rights.

The State's failure to preserve evidence discovered in the course of a criminal investigation can, in limited circumstances, violate a criminal defendant's right to due process.

> In dealing with the failure of the state to preserve evidence which might have exonerated the defendant, a court must determine both whether the evidence was material and whether the police acted in bad faith in failing to preserve the evidence. *Arizona v. Youngblood*, 488 U. S. 51 (109 SC 333, 102 LE2d 281) (1988). To meet the standard of constitutional materiality, the evidence must possess an exculpatory value that was apparent before it was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. *California v. Trombetta*, 467 U. S. 479 (104 SC 2528, 81 LE2d 413) (1984).

*Walker v. State*, 264 Ga. 676, 680 (449 SE2d 845) (1994). Accord *Ballard v. State*, 285 Ga. 15, 15-16 (673 SE2d 213) (2009).

While the bat photographed in Krause's car was clearly "potentially useful evidence," *Youngblood*, 488 U. S. at 58, it was not material exculpatory evidence, see *Trombetta*, 467 U. S. at 488-489. There was no apparent reason for the police to think that the bat would tend to exonerate rather than further inculpate Chesser (or Krause). The cause of Carver's death appeared to be a gunshot wound, not a bat, and the other evidence linking both Chesser and Krause to the murder was strong. Furthermore, Chesser did not even argue bad faith failure to preserve the bat evidence at trial, much less produce any evidence of bad faith on the part of the State. Accordingly, Chesser's due process rights were not violated. See

*Walker*, 264 Ga. at 680-681.

9. We address one final matter with respect to Chesser, although he did not raise it as an issue on appeal. The record shows that the trial court sentenced Chesser to separate life sentences for malice murder and felony murder. However, because there was only one homicide victim, Chesser could not be sentenced for both malice murder and felony murder. See *Martinez v. State*, 283 Ga. 122, 123 (657 SE2d 199) (2008). Accordingly, Chesser's conviction for felony murder must be vacated by operation of law, see id., as the trial court recognized with respect to Krause's sentencing.

*Judgment affirmed in Case No. S09A1453. Judgment affirmed in part and vacated in part in Case No. S09A1454. All the Justices concur.*

DECIDED MARCH 22, 2010.

*McGee & McGee, James B. McGee III*, for appellant (case no. S09A1453).

*Martin H. Eaves*, for appellant (case no. S09A1454).

*Richard E. Currie, District Attorney, George E. Barnhill, Charles D. Gafnea, Michelle C. McIntire, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Sara K. Sahni, Assistant Attorney General*, for appellee.