294 Ga. 741
FINAL COPY

S13A1908.  FLOURNOY v. THE STATE.
S13A1909.  WILLIAMS v. THE STATE.

BENHAM, Justice.

Appellants Maurice Flournoy and Michael Williams were tried jointly and each was convicted of felony murder (with the underlying felony of aggravated assault by shooting the victim) and related crimes stemming from an armed robbery during a drug buy.[1] Both appellants filed a motion for new trial, which

_____

[1] The crimes were committed on May 27, 2006.  Appellants Flournoy and Williams were jointly indicted by a Barrow County grand jury on August 8, 2006 on identical charges of malice murder of Aaron Gaddis, felony murder (aggravated assault) of Gaddis, kidnapping with bodily injury of Gaddis, two counts of kidnapping (relating to victims Jaylon Vanderford and Ashley Russell), armed robbery of Gaddis, three counts of aggravated assault (relating to each of the three victims), and possession of a firearm during commission of a crime.  Williams was also charged with possession of a firearm by a convicted felon which was bifurcated prior to trial.  A joint jury trial was held from February 26 to March 1, 2007.  With respect to malice murder, Flournoy was found not guilty, and the jury was unable to reach a unanimous verdict as to Williams's guilt.  Both defendants were found guilty on all other counts.  On March 1, 2007, each defendant was sentenced to life in prison on the felony murder conviction and life in prison on the armed robbery conviction to be served concurrently with the felony murder conviction.  With respect to the remaining convictions, each defendant was sentenced as follows:  life imprisonment on the kidnapping with bodily injury conviction to be served consecutively with the felony murder sentence; confinement for 20 years on the first kidnapping conviction (without bodily injury) to be served consecutively to the two life imprisonment sentences; confinement for 20 years on the second kidnapping conviction (without bodily injury) to be served concurrently with the sentence for the first kidnapping conviction; confinement for five years for conviction of possession of a firearm during the commission of a crime to be served consecutively to the life sentence for felony murder; and with respect to each defendant, the conviction for aggravated assault was merged with the felony murder conviction for purposes of sentencing.  After trial, Williams entered a guilty plea on the charge of possession of a firearm by a convicted felon and was sentenced to confinement for five years to be served consecutively with the sentences for felony murder, kidnapping, and armed robbery.

Flournoy filed a motion for new trial on March 28, 2007, which was amended on January 18,

was denied. For the reasons set forth below, the appellants' convictions are affirmed.

Viewed in the light most favorable to the verdict, the evidence shows Flournoy and Williams worked for the same employer as Jaylon Vanderford. Flournoy approached Vanderford about purchasing marijuana, and Vanderford arranged a deal whereby his friend Aaron Gaddis would sell Flournoy five pounds of marijuana for $5,500. On May 27, 2006, Vanderford, accompanied by his girlfriend, Ashley Russell, drove to meet Flournoy at a convenience store so Flournoy could follow him to Gaddis's house. Flournoy arrived with Williams, and instead of following Vanderford in a separate car, they got into the back seat of Vanderford's vehicle and asked him to drive them to Gaddis's residence. On the way, one or both appellants pointed a gun at Vanderford and Russell, and Flournoy told them they were being held up. In an apparent effort to demonstrate the gun was real, Flournoy told Williams to "click" the gun and

2012, and on November 13, 2012. Williams filed a motion for new trial on March 28, 2007, which was amended on November 2, 2012. On November 16, 2012, the trial court conducted a joint hearing on these motions and, in a joint order dated February 14, 2013, the trial court denied both defendants' motions for new trial. Flournoy filed a notice of appeal on February 25, 2013, and Williams filed a notice of appeal on March 7, 2013, and both appeals were docketed to the September 2013 term of this Court. The two appeals were consolidated for purposes of oral argument and were argued on November 4, 2013.

2

to shoot Vanderford in the leg if he did not follow directions. Upon arriving at Gaddis's house, Gaddis came out and got into the back seat of the car to conduct the transaction. Gaddis passed the marijuana to Flournoy who then passed it to Williams. Flournoy then informed Gaddis he was being robbed and commanded Gaddis to drop his trousers so he could confirm he was unarmed. Flournoy then ordered Vanderford to drive back to his car. On the way, Gaddis and Flournoy engaged in an argument, and Gaddis apparently struck Flournoy. Vanderford and Russell heard a pop and then heard Flournoy exclaim to Williams, "You just shot him, man!" Gaddis asked to be taken to the hospital, but Williams said, "No . . . take us to the store." Vanderford complied with Williams's demand and dropped Flournoy and Williams off where they had parked Flournoy's car. Vanderford then took Gaddis to the hospital where he died from a single gunshot wound to the chest.

Once Williams was apprehended, he directed law enforcement to a pistol he admitted he had tried to destroy and had hidden in a drainage pipe outside his residence. Markings on the .25 caliber bullet recovered from Gaddis's body matched the pistol. Williams also admitted possession of the marijuana to law enforcement officers and told them where he had disposed of it, but it was never

3

found.

1. The evidence adduced at trial and summarized above was sufficient to authorize a rational trier of fact to find both appellants guilty beyond a reasonable doubt of the crimes for which they were convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

*Case No. S13A1908*

2. With respect to the felony murder charge (Count 2 of the indictment), the indictment accused both appellants with causing Gaddis's death by aggravated assault by "shooting Aaron Gaddis" and with respect to the aggravated assault charge relating to Gaddis (Count 7), the indictment accused them of "mak[ing] an assault upon the person of Aaron Gaddis, with a pistol, a deadly weapon, by shooting him . . . ." The trial court instructed the jury that "a person commits aggravated assault when that person assaults another person with a deadly weapon, which is alleged in count 7." The trial court further gave the general instruction on aggravated assault, stating that aggravated assault with a deadly weapon "is defined as an act committed with a deadly weapon, which act places another person in reasonable apprehension of immediately receiving a violent injury." Relying upon *Talton v. State*, 254 Ga. App. 111 (561 SE2d

4

139) (2002), Flournoy asserts the denial of his motion for new trial must be reversed because the trial court's instructions constructively amended the indictment by allowing the jury to convict on the aggravated assault count as well as the felony murder count if it found Flournoy merely pointed a pistol at Gaddis as opposed to shooting him, as averred in the indictment. We find no reversible error.[2]

In addition to the language quoted above, the trial court also charged the jury that it would be authorized to find a defendant in this case guilty of felony murder if it found beyond a reasonable doubt that the defendant committed the crime of "aggravated assault with a deadly weapon, as specifically alleged in Count 2 of the indictment . . . ." In the indictment, Flournoy and Williams were accused not only of aggravated assault of Gaddis "with a pistol, a deadly weapon, by shooting him"; the indictment also accused them in separate counts of aggravated assault of Vanderford and Russell by "assault . . . with intent to rob by brandishing a pistol . . . ." The trial court charged the jury: "Aggravated

---

[2] This case was tried prior to the effective date of OCGA § 17-8-58 and thus, contrary to the State's assertion, Flournoy's failure to object to the instruction before the jury retired to deliberate does not waive the issue for appellate review where, as here, defendant stated that he reserved all objections to the jury instructions. See *Walker v. State*, 293 Ga. 709, 720, n. 6 (749 SE2d 663) (2013).

assault may be committed in a number of ways. You should examine the indictment and find a particular [d]efendant guilty only if the State proves that [d]efendant's guilt beyond a reasonable doubt as specifically alleged in that count of the indictment." Further, the record reflects that the jury was provided with a copy of the indictment and the trial court charged the jury that "[t]he burden of proof rests upon the State to prove every material allegation of the indictment and every essential element of each crime charged beyond a reasonable doubt."

Accordingly, we find no error in the manner in which the jury was charged on the indictment's accusation of aggravated assault with respect to Gaddis or the accusation of felony murder. Even though the trial court charged the jury on the general definition of aggravated assault with a deadly weapon, it clearly and unequivocally charged that, with respect to the Count 7 allegation of aggravated assault of Gaddis, defendants could be found guilty only upon the crime as alleged in the indictment. It gave a similar instruction with respect to Count 2 which alleged felony murder. Even where a jury instruction is defective in that the trial court instructs the jury that an offense could be committed by other statutory methods than the one method charged in the indictment, which

6

did not occur in this case, such a defect is cured where, as here, "the court provides the jury with the indictment and instructs jurors that the burden of proof rests upon the State to prove every material allegation of the indictment and every essential element of the crime charged beyond a reasonable doubt." (Citations, punctuation and italics omitted.) *Williams v. Kelley*, 291 Ga. 285, 286-287 (728 SE2d 666) (2012). Further, in order to convict, the jury of necessity had to find the defendants shot the victim, and therefore Flournoy's assertion that the instruction improperly permitted the jury to convict for aggravated assault if it found defendants had simply pointed a pistol at Gaddis, without actually shooting him, lacks merit. Compare *Patel v. State*, 278 Ga. 403 (5) (603 SE2d 237) (2004) (where the defendant was charged with felony murder predicated upon aggravated assault "by shooting," the jury necessarily found defendant shot the victim as alleged in the indictment).

3. According to Flournoy, the evidence supports the conclusion that it was Williams and not Flournoy who shot Gaddis. Thus, he asserts the trial court erred by failing to instruct the jury on the theories of conspiracy and proximate cause because without those instructions, the jury could not have convicted him.

7

We reject this assertion.[3]

The trial court properly instructed the jury on the issue of conviction as a party to a crime. Pursuant to OCGA § 16-2-20 (b), a person may be convicted of commission of a crime even if he or she does not directly commit the crime but, instead, "[i]ntentionally aids or abets in the commission of the crime; or . . . [i]ntentionally advises, encourages, hires, counsels, or procures another to commit the crime." While this statute "does not use the word 'conspiracy' it is plain that it embodies the theory of conspiracy insofar as it renders one not directly involved in the commission of a crime responsible as a party thereto." *Scott v. State*, 229 Ga. 541, 544 (1) (192 SE2d 367) (1972) (construing the predecessor statute to OCGA § 16-2-20). Consequently, in *Scott*, this Court held the trial court did not err in instructing the jury on the theory of conspiracy where the evidence demonstrated the criminal charge against the defendant was based on this theory even though he was not charged with criminal conspiracy.

---

[3] The State asserts this error was not preserved for appellate review because this objection to the jury instructions as a ground for new trial was abandoned and/or waived in Flournoy's second amended motion for new trial and at the hearing on the motion. However: "On appeal, a party shall not be limited to the grounds urged in the motion [for new trial] or any amendment thereof." OCGA § 5-5-40 (g). See *Jorisch v. Rhythm Festival, Inc.*, 247 Ga. App. 470, 471-472 (1) (544 SE2d 459) (2001); *Burke v. State*, 201 Ga. App. 50, 52 (3) (410 SE2d 164) (1991).

8

Id.  See also *Mister v. State*, 286 Ga. 303, 307 (5) (b) (687 SE2d 471) (2009).

But this does not mean, as Flournoy argues, that an instruction on the theory of conspiracy is required before a jury may convict a defendant, who did not directly commit the crime, as a party to the crime.  "[W]hether a person was a party to a crime can be inferred from his presence, companionship, and conduct before and after the crime was committed." (Citation omitted.) *Teasley v. State*, 288 Ga. 468, 469 (704 SE2d 800) (2010).  In this case, the evidence showed Flournoy knew Williams was armed and that he and Williams acted jointly to rob and kidnap Gaddis at gunpoint.  It showed that after the shooting, Flournoy fled the scene with Williams.  Accordingly, the fact that Flournoy "did not actually fire the gun does not affect his convictions."  Id.  Every person "concerned in the commission of a crime is a party thereto . . . ." *Yancey v. State*, 281 Ga. 664, 665 (641 SE2d 524) (2007) (quoting OCGA § 16-2-20 (a)).  The evidence was sufficient to support a jury finding that Flournoy was a party to the aggravated assault of Gaddis by shooting him, and the trial court did not err by failing to instruct the jury on the theory of conspiracy to commit that crime.

With respect to causation, the indictment alleged Flournoy, while in the commission of the felony of aggravated assault, "did cause the death of Aaron

Gaddis . . . by shooting [him] . . . ." The trial court's instruction on felony murder and party to a crime, which referenced the allegations of the indictment, was sufficient to inform the jury that, in order to convict, it had to determine Flournoy caused or was a party in the causing of Gaddis's death, and thus no error is shown by the trial court's failure to give a charge on proximate cause. See *Pennie v. State*, 292 Ga. 249, 252 (2) (736 SE2d 433) (2013).

4. Flournoy was sentenced to life imprisonment on the conviction for that count of the indictment that accused him of kidnapping with bodily injury by causing Gaddis "to receive bodily injury, to wit: a gunshot wound . . . ." This sentence was ordered to be served consecutively to the life sentence for felony murder of Gaddis by causing Gaddis's death by shooting him. Flournoy asserts that because there was only one gunshot involved in these two offenses, these convictions arise from the same action and thus the trial court erred by failing to apply the merger rule and imposing only one life sentence.

> To determine if one crime is included in and therefore merges with another, we apply the "required evidence" test set forth in *Drinkard v. Walker*, 281 Ga. 211 (636 SE2d 530) (2006). Under that test, we examine "whether each offense requires proof of a fact which the other does not."

(Citations and punctuation omitted.) *Thomas v. State*, 292 Ga. 429, 433 (4) (738

10

SE2d 571) (2013).

In *Thomas*, although the offense of aggravated assault with intent to rob and the offense of felony murder based on aggravated assault with a deadly weapon were both committed with the same weapon, a gun, this Court held the two offenses did not merge for the purposes of sentencing. This Court noted that Thomas's conviction on the charge of aggravated assault with intent to rob required proof of intent to rob that the State was not required to prove in order to convict him on felony murder predicated on aggravated assault with a deadly weapon. Id. Likewise, the felony murder count required proof that the appellant caused the death of the victim, which the State was not required to prove in order to convict for aggravated assault with an intent to rob. Id. Similarly, in this case, Flournoy's conviction for felony murder by causing Gaddis's death by shooting him required proof of the fact that the victim's death was caused by the gunshot, a fact not required for conviction of kidnapping with bodily injury. Moreover, conviction for kidnapping with bodily injury required not only proof of an injury caused by the shooting but also asportation of the victim and that he was held against his will. See OCGA § 16-5-40. Asportation and holding the victim against his will is not an element of the crime of felony murder, and it

11

was not required to be shown in order to convict Flournoy of felony murder. Consequently, we reject Flournoy's assertion that he may only be sentenced to one life term for these two convictions.

*Case No. S13A1909*

5. Once Flournoy was taken into custody, but prior to his arrest, in the presence of law enforcement officers, Flournoy voluntarily made three phone calls to Williams, who was still at large. In the phone calls, Flournoy made statements that implicated himself in the crimes and also asked questions of Williams that had been coached or scripted by law enforcement officers. Flournoy's questions and statements in these conversations identified Williams as the shooter and otherwise implicated Williams in the crimes. In his responses to Flournoy in these phone calls, Williams also implicated himself in the crimes. Recordings and uncertified transcripts of these conversations were tendered into evidence at trial, but neither defendant testified. Prior to trial, and again after admission of this evidence, Williams sought to sever the trial of the two defendants, which the trial court denied. Williams asserts the trial court erred by denying his motion to sever. This alleged error is related to his assertion that the trial court also erred by admitting Flournoy's statements over Williams's

12

objection, thus violating his Sixth Amendment right of confrontation pursuant to *Bruton v. United States*, 391 U. S. 123 (88 SCt 1620, 20 LE2d 476) (1968).[4]

Where, as here, two or more defendants are jointly indicted for a capital offense for which the State does not seek the death penalty,

the trial court has broad discretion to grant or deny a motion for severance. See OCGA § 17-8-4 [cit.]. In ruling on a severance motion, the trial court should consider: (1) the likelihood of confusion of the evidence and law; (2) the possibility that evidence against one defendant may be considered against the other defendant; and (3) the presence or absence of antagonistic defenses.

*Krause v. State,* 286 Ga. 745, 749 (5) (691 SE2d 211) (2010).[5] Here, the trial

---

[4] In *Bruton*, the Supreme Court ruled that the admission of the confession of a non-testifying co-defendant which was inculpatory of the defendant deprived the defendant of the right to cross-examine witnesses, and the Sixth Amendment right to confront witnesses, even when the admission was accompanied by an instruction limiting the jury's consideration of the confession to the case against the confessing co-defendant. *Bruton,* supra, 391 U. S. at 137.

[5] That the trial court did not make explicit findings with respect to each of these factors does not support Williams's claim of abuse of discretion. It is obvious from the transcript that the trial court properly considered these factors when denying Williams's motion to sever. See *Garmon v. State*, 317 Ga. App. 634, 635-636 (2) (732 SE2d 289) (2012).

13

court did not abuse its discretion in finding that the number of defendants in the case and the evidence presented were not likely to confuse the jury. There were only two defendants, the same witnesses testified against both defendants, and the defendants jointly attacked the credibility of the state's witnesses. Compare *Griffin v. State*, 273 Ga. 32 (537 SE2d 350) (2000) (affirming the denial of the motion to sever where these factors were present, although, unlike the present case, no custodial statements were given). Further, as in *Krause*, the law applicable to each defendant was substantially the same, and the evidence showed the defendants acted together. See *Krause*, supra, 286 Ga. at 750. Although the defendants in this case raised antagonistic defenses, that is insufficient to require severance where, as here, the appellant "has shown no specific prejudice from the presentation of the antagonistic defenses." Id. The trial court properly instructed the jury that an out-of-court statement made by one of the defendants after the alleged criminal acts have ended is admissible only against the person who made the statement and that they should consider such a statement only as against the defendant who made it. Thus, neither the

first nor third factor discussed in *Krause* requires separate trials.[6]

Relating to the second factor, the possibility that evidence against Flournoy may be considered against Williams, Williams asserts that admission of the phone conversations implicating him in the crimes, when Flournoy elected not to testify and was thus unavailable for cross-examination, robbed him of his constitutional right to confront the witness. In this case, however, Williams's own statements and actions directly implicated himself in the crimes since he led police to the gun used in the commission of these crimes and admitted to having possession of the marijuana stolen from Gaddis. Consequently, any resulting prejudice from the failure to sever the trials of the two defendants was harmless error. See *Krause,* supra. Likewise, even if the introduction of this evidence was a *Bruton* violation, it was harmless error under *Schneble v. Florida*, 405 U. S. 427, 430 (92 SCt 1056, 31 LE2d 340) (1972), where the Supreme Court held:

> In some cases the properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of the codefendant's

---

[6] That the jury acquitted Flournoy on the malice murder count but failed to reach a verdict as to Williams does not, as Williams asserts, demonstrate jury confusion; it shows the jury was able to distinguish between the evidence of guilt as to the two defendants and is consistent with the theory that Williams was the shooter.

admission is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the admission was harmless error.

Here, the two surviving victims testified and were subject to cross-examination. Further, Williams directly implicated himself in the crimes by his statements to the investigating officer. This, in conjunction with the overwhelming evidence of his guilt, supports the conclusion that any error in admitting the co-defendant's statements was harmless error beyond a reasonable doubt. See *Hanifa v. State*, 269 Ga. 797, 804 (2) (505 SE2d 731) (1998); *Lane v. State*, 324 Ga. App. 303, 313 (5) (750 SE2d 381) (2013).

6. Williams asserts the trial court erred by failing to give his requested jury instruction regarding voluntary manslaughter over the timely objection of trial counsel. Only slight evidence of voluntary manslaughter is required to entitle a defendant to a requested charge on that offense. *State v. Clay*, 249 Ga. 250 (1) (290 SE2d 84) (1982). Where the evidence would authorize a verdict of either voluntary manslaughter or felony murder, the trial court must instruct on both forms of homicide. *Edge v. State*, 261 Ga. 865 (2) (414 SE2d 463) (1992). Voluntary manslaughter may be found when the defendant acted "solely as the result of a sudden, violent, and irresistible passion resulting from serious

provocation sufficient to excite such passion in a reasonable person . . . ." OCGA § 16-5-2 (a). But whether evidence exists to support such a finding is a question of law. *Chapman v. State*, 275 Ga. 314, 318 (5) (a) (565 SE2d 442) (2002).

Williams argues he was provoked by Gaddis's physical aggression in the back seat of the car and that, since the robbery was complete at that point, the rule that a voluntary manslaughter instruction is not warranted when the only evidence of provocation is the victim's resisting armed robbery does not bar his right to an instruction in this case. See *Nance v. State*, 272 Ga. 217, 221 (3) (526 SE2d 560) (2000). The issue, however, is whether the nature of the provocation was sufficient to excite "sudden, violent, and irresistible passion . . . in a reasonable person." Relying upon *Washington v. State*, 249 Ga. 728 (292 SE2d 836) (1982), Williams argues that Gaddis's attack on Flournoy was sufficient provocation to arouse Williams's anger and fear of physical injury. In *Washington*, however, the victim was continuing to make threats against the life of appellant's son after the victim had already critically injured the son, and appellant testified he believed the victim had a gun. Id. at 730. These facts were deemed sufficient to create a jury issue as to whether the appellant acted as a

result of irresistible passion. Id. The facts of this case, however, are more closely analogous to those in *Hicks v. State*, 287 Ga. 260 (695 SE2d 195) (2010), in that there is no evidence that Williams and Flournoy were related or had the type of relationship "that would explain an impassioned attack by [Williams]." Id. at 263 (3) (no evidence to show the appellant acted out of sudden, violent, and irresistible passion when the alleged provocation was the victim's altercation with an unrelated third party). The only evidence of any relationship between Williams and Flournoy was that they worked for the same employer and had engaged in this criminal transaction. More importantly, Williams knew Gaddis did not have a gun because Flournoy made Gaddis drop his trousers after holding him at gunpoint so he could confirm he was not armed. The evidence shows Gaddis struck Flournoy, but Williams and Gaddis were separated in the back seat of the car by Flournoy, who was sitting between them.

7. Consistent with the applicable law at the time this case was tried, the trial court instructed the jury that "[o]nly the slightest movement of the victim is required to constitute the necessary element of asportation." After the date this case was tried, this Court, in *Garza v. State*, 284 Ga. 696, 702 (1) (670 SE2d 73) (2008), announced a new standard for determining whether the movement

18

at issue in a case constitutes asportation. Because the rule established in *Garza* was substantive, it has been applied retroactively. See, e.g., *Hammond v. State*, 289 Ga. 142, 144 (1) (710 SE2d 124) (2011). Williams asserts he is entitled to a new trial on the kidnapping counts because, he claims, the incorrect jury instruction is not harmless because the asportation in this case was part and parcel of all the actions taken by the appellants. We disagree.

Pursuant to the test set forth in *Garza*, the question of whether asportation was more than "merely incidental" to another crime is decided based on the consideration of four factors:

> (1) the duration of the movement; (2) whether the movement occurred during the commission of a separate offense; (3) whether such movement was an inherent part of that separate offense; and (4) whether the movement itself presented a significant danger to the victim independent of the danger posed by the separate offense.

*Garza*, supra, 284 Ga. 702. The satisfaction of all four factors is not required in order to establish that asportation has occurred. See *Hammond*, supra, 289 Ga. at 144-145 (2). The evidence of movement was substantial, involving a number of miles. Although the movement occurred during the commission of the armed robberies, movement was not an inherent or necessary part of these

crimes. Movement was not an inherent or necessary part of the shooting. The movement itself presented a significant danger to all the victims independent of the danger posed by the separate offenses since the movement isolated the victims and prevented them from seeking protection or rescue. This is particularly true with respect to the asportation of Gaddis, as the appellants specifically prevented Vanderford from seeking immediate medical attention for Gaddis's injury. Consequently, we conclude the evidence was sufficient for the jury to find the asportation element of kidnapping, as set forth in *Garza,* was proven in this case. See *State v. Clements*, 289 Ga. 640 (2) (c) (715 SE2d 59) (2011) (concluding movements that were short in distance and duration were nevertheless sufficient asportation to meet the *Garza* test where the movement was not a necessary part of the other crimes charged and it served to isolate the victim and prevent her from seeking assistance). "Therefore, it is highly probable that the error of the trial court in not instructing the jury to consider the asportation element of kidnaping using the *Garza* test did not contribute to the judgment of guilt. The error of the trial court is therefore not reversible . . . ." *Hammond*, supra, 289 Ga. at 145 (2). Williams is not entitled to a new trial on the kidnapping charges.

8.  For the reasons set forth in Division 2, we reject Williams's assertion that the trial court's jury instruction improperly constructively amended the indictment's accusation on the felony murder count and the aggravated assault count.  For the reasons set forth in Division 4, we reject Williams's assertion that the conviction for kidnapping with bodily injury should have merged with the conviction for felony murder.

Judgments affirmed.  All the Justices concur.

_____

_____ Decided March 10, 2014.

Murder. Barrow Superior Court. Before Judge Motes.

Stephen R. Scarborough, Charles E.W. Barrow, for appellants (case no. S13A1908).

Arrianne E. Mathe', for appellant (case no. S13A1909).

J. Bradley Smith, District Attorney, Anna G. Bolden, Assistant District Attorney, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, for appellee.