A04A1659. ROGERS v. THE STATE.
(610 SE2d 679)

ADAMS, Judge.

Kenneth Michael Rogers was convicted by a jury of rape, kidnapping, aggravated sodomy and burglary. He appeals following the denial of his motion for new trial.

1. Rogers first contends that the trial court did not adequately inform him of the dangers of proceeding pro se, and therefore he did not knowingly and intelligently relinquish his right to counsel. However, Rogers' argument on appeal differs from that made in the trial court. Although on appeal Rogers complains about the trial court's failure to adequately inform him of the dangers of self-representation, the transcript shows that Rogers' contention in the trial court was that his appointed attorney should be discharged and a different attorney appointed to represent him. " 'If a defendant does not show good cause for discharging his appointed attorney, the trial court does not err in requiring him to choose between representation by that attorney and proceeding pro se.' (Footnote omitted.) *Hickey v. State*, 259 Ga. App. 240, 243 (2) (a) (576 SE2d 628) (2003)." *Tucker v. State*, 264 Ga. App. 872, 873-874 (1) (592 SE2d 521) (2003).

Moreover, contrary to Rogers' argument on appeal, the trial court did review Rogers' responsibilities once he chose to proceed pro se, and ensured that Rogers had been made aware that the State was seeking to punish him as a recidivist, resulting in a sentence of life without parole. Moreover, the trial court also took the additional precaution of having Rogers' previously appointed counsel continue to assist Rogers at any time that Rogers requested that assistance, and Rogers was given ample opportunity and did confer with counsel on numerous occasions throughout the proceedings. This enumeration is thus without merit.

2. Next Rogers argues that the trial court acted improperly by failing to use less restrictive measures prior to ordering that a duct tape gag be placed over his mouth during a portion of the proceedings. However, the record demonstrates Rogers had been warned on numerous occasions to cease making numerous and repetitive motions and inappropriate remarks during the proceedings, which the trial court characterized on the record as an attempt to obstruct and to interfere with the administration of the trial. The trial court also noted in the order denying Rogers' motion for new trial that the alternative of removing Rogers from the courtroom was not available because Rogers was proceeding pro se at that stage of the proceedings, and that a contempt sanction would have been meaningless to Rogers, who was facing a sentence of life without parole. The record also demonstrates that the gag was kept in place only during a short portion of the proceedings, and was removed and not replaced after

the trial court informed Rogers that the gag would be left off if he abided by the court's instructions and did not make inappropriate comments in front of the jury. Lastly, the trial court instructed the jury that no harmful inference was to be made based on her decision to have the gag placed on Rogers. In light of these circumstances, we find no merit to Rogers' contention that he is entitled to a reversal of his conviction and a new trial because the trial court did not employ less restrictive alternatives to control his conduct during the trial.

3. Rogers also contends that the trial court should have questioned the jurors individually to determine if prejudicial deliberations had begun prematurely before the close of evidence.

The transcript shows that a juror sent the trial court a note stating that some discussion had occurred among the jurors during breaks. The trial court extensively questioned the juror, who could not recall that any specific discussion of the evidence had occurred. When the remainder of the jurors returned to the courtroom, the trial court reiterated its earlier instructions that the jury was not to begin deliberating, or talking about the case in any manner, prior to the close of the evidence. The trial court then asked the jurors "is there anyone who has heard or seen anything up to this point in the trial that makes you feel that you cannot be a fair and impartial juror in this case. . . . Heard or seen anything that means you cannot fulfill your oath as a fair and impartial juror in this case." No juror responded to the court's question, and Rogers did not request that the trial court question each juror individually at that time. There is thus nothing to show that the jurors did begin deliberating in the case before the close of evidence, or that Rogers requested that the trial court question the jurors in the manner he now contends was necessary. This enumeration is thus also without merit.

4. In a related enumeration, Rogers also contends that his appellate counsel should have been granted access to the juror contact information for the purpose of determining whether the alleged premature deliberations had an effect on the verdict. However, as we held in Division 3, Rogers did not request that the jurors be questioned individually at the time the alleged premature deliberations were reported to the trial court, and there is nothing in the record to indicate, despite inquiry from the trial court, that anything had occurred that might affect any juror's ability to be fair and impartial in their deliberations. "As a general rule, 'affidavits of jurors may be taken to sustain but not to impeach their verdict.' OCGA § 17-9-41. Exceptions to this rule are narrowly permitted." *Nichols v. State*, 234 Ga. App. 553 (507 SE2d 793) (1998). This case does not fall within one of those narrow exceptions, and the trial court did not err by denying Rogers' request to obtain information that

would have allowed him or his appellate counsel to personally contact the members of the jury.

5. Rogers also contends that his case should have been dismissed because it was not tried in a timely manner following the filing of his demand for a speedy trial. Although Rogers concedes his demand was not filed during the term the indictment was filed or during the next succeeding term as set forth in OCGA § 17-7-170 (a), relying on *Prather v. State*, 261 Ga. App. 506 (1) (583 SE2d 191) (2003), he argues that the trial judge, by accepting the late filing in open court, gave him the special permission that is required to file a demand at a later time. However, in *Prather*, the trial judge specifically told defense counsel "You want a demand, file it and we will try this case quickly." Id. at 506. In contrast, in this case the trial judge merely accepted the speedy trial demand, along with several other motions, for filing in open court, after explaining to Rogers that she was accepting the motions for filing so they could be stamped by the clerk and made a part of the record. Thus, unlike in *Prather*, nothing the trial court said or did in this case could be construed as granting Rogers special permission to file his demand or as indicating that such demand would be granted once it was filed.

6. Rogers also contends that his "pre-trial" attorney (i.e., his appointed attorney before he undertook self-representation) was ineffective for failing to inform the State of his alibi defense and witness, which resulted in the exclusion of his alibi defense at trial. At trial, Rogers asserted that he was with his brother in Charlotte, North Carolina, on the date the crime was committed, and that his brother should be allowed to so testify at trial since he informed his appointed counsel of this defense and testimony and it was due to her ineffectiveness that the State was not notified. Counsel informed the trial court that she had contacted the brother, but after interviewing him, determined that he could not provide testimony establishing an alibi defense because he had no recollection of his brother's where-abouts on specific dates and times. Counsel also testified at the motion for new trial hearing and reiterated that after interviewing the potential witness she determined he could not testify that Rogers was with him in Charlotte on the specific date and time the crime occurred, and thus did not consider him to be able to provide an alibi defense for Rogers. We agree. "The defense of alibi involves the impossibility of the accused's presence at the scene of the offense at the time of its commission. The range of the evidence in respect to time and place must be such as reasonably to exclude the possibility of presence." OCGA § 16-3-40.

Moreover, at the motion for new trial hearing, Rogers asserted a new and entirely different defense theory — that he and his brother were at the victim's apartment in Atlanta, Georgia, on the night of the

crime, and that his brother would testify that Rogers had consensual sex with the victim. Under this version of events, counsel could not be ineffective for failing to list Rogers' brother as an alibi witness because Rogers' defense was no longer alibi but consent, and nothing in the trial court's ruling excluding Rogers' alibi defense would have precluded a defense of this nature at trial.

*Judgment affirmed. Ruffin, C. J., and Bernes, J., concur.*

DECIDED FEBRUARY 18, 2005.

*Maurice G. Kenner*, for appellant.

*Jeffrey H. Brickman, District Attorney, Elisabeth G. Macnamara, Assistant District Attorney*, for appellee.