**FIRST DIVISION**
**DOYLE, C. J.**
**PHIPPS, P. J. and RICKMAN, J.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 2, 2016**

# In the Court of Appeals of Georgia

A15A1639. HALL v. THE STATE.

RICKMAN, Judge.

Following a jury trial, Fredrick Hall was convicted of armed robbery, burglary, aggravated assault, two counts of false imprisonment, and two counts of possession of a firearm during the commission of a crime.[1] He argues that the trial court erred by allowing the State to impeach a defense witness with evidence of a prior crime for which she pled guilty and received first-offender treatment, by including the complete definition of aggravated assault in the jury charge, and by denying his motion to suppress evidence of the victims' pretrial and trial identifications of him as a perpetrator. Hall further argues that his trial counsel rendered ineffective assistance of counsel. We find no reversible error and affirm.

---

[1] Hall was acquitted of theft by receiving stolen property.

On appeal from a criminal conviction, we view the evidence in the light most favorable to support the jury's verdict, and the defendant no longer enjoys a presumption of innocence. We do not weigh the evidence or judge the credibility of the witnesses, but determine only whether the evidence authorized the jury to find the defendant guilty of the crimes beyond a reasonable doubt in accordance with the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LEd2d 560) (1979).

(Citation and punctuation omitted.) *Williams v. State*, 304 Ga. App. 787 (697 S.E.2d 911) (2010).

So construed, the evidence adduced at trial showed that on the afternoon in question, the male victim was standing outside of his apartment when he was approached by two men, both of whom he knew by their street names, "Freddie G" and "KD." The men pulled out guns and demanded money, and after the male victim demonstrated that he did not have any, forced him at gunpoint into his apartment where his pregnant girlfriend was resting on the couch. As "Freddie G," later identified as Hall, remained with his gun trained on the victims, "KD," later identified as Kevin Deloach, rummaged through the apartment looking for valuables. They ultimately placed numerous pairs of the male victim's basketball shoes into a laundry basket and took the female victim's purse.

2

As the men exited the apartment with the victims' belongings, they forced the male victim at gunpoint to walk them to their vehicle. One of the perpetrators stumbled down the stairs outside the apartment, resulting in the victims' neighbor hearing a "bumping" sound that caused her to open the door. She observed the male victim and a man who she later identified as Hall standing outside her door, but was told to go back inside. The gunmen then entered into a light-blue four door vehicle and fled. The female victim immediately called law enforcement and reported the tag number of the fleeing vehicle.

A short-time later, a sheriff's deputy observed a light-blue vehicle driving through a neighborhood at a high rate of speed. The deputy activated his blue lights and attempted to conduct a traffic stop, but the vehicle instead turned into a different neighborhood in an effort to evade the deputy. Almost immediately after the deputy initiated pursuit, he received a dispatch report that the same vehicle was wanted in connection with the victims' home invasion. At some point, the deputy was forced to reduce his speed due to public safety concerns, and he temporarily lost sight of the fleeing vehicle. Shortly thereafter, the vehicle was located; although the occupants had absconded, the victims' belongings were found inside.

At the apartment, both victims were able to provide to the investigator a detailed physical description of the perpetrators, and the male victim also relayed their street names. The ensuing investigation led to the creation of a lineup containing a photograph of Hall among photographs of five other males. Approximately five hours after the crime, the victims were shown the lineup and both immediately identified Hall as the gunman who had forced his way into their apartment.

During the ensuing trial, both of the victims again identified Hall as the perpetrator. The victims' neighbor also identified Hall as the man she had seen with the male victim on the stairway outside of the victim's apartment.

Hall's girlfriend testified as an alibi witness and claimed that she had been with Hall throughout the day in question and denied that they had been to the victims' apartment. Over Hall's objection, the trial court allowed the State to cross-examine her about a letter that Hall had written in a previous case in which he accepted responsibility for a crime to which she had pled guilty and received first offender treatment.

Hall was convicted, and the trial court denied his motion for new trial. This appeal follows.

4

1. Hall argues that the trial court erred by allowing the State to impeach his girlfriend using her first-offender plea. At the time of trial, Hall's girlfriend was still serving first-offender probation and had not been adjudicated guilty of that crime. See OCGA § 42-8-62 (a) ("Upon fulfillment of the terms of [first offender] probation, . . . the defendant shall be discharged without court adjudication of guilt.").

Hall is correct that "unless there is an adjudication of guilt, a witness may not be impeached on general credibility grounds by evidence of a first offender record." *Matthews v. State*, 268 Ga. 798, 802 (4) (493 SE2d 136) (1997); see *Sanders v. State*, 290 Ga. 445, 446 (2) (721 SE2d 834) (2012) ("The successful completion of probation as a first offender shall not be considered a criminal conviction and cannot be used to impeach a witness on general credibility grounds."). An exception to this general rule exists, however, when the purpose of the impeachment is to show a witness's bias. See *Sanders*, 290 Ga. at 446 (2) ("When the impeachment is to show bias, . . . we have previously held that the Confrontation Clause of the Sixth Amendment permits a defendant in a criminal case to cross-examine witnesses about their first offender status."). The trial court "retain[s] broad discretion to impose reasonable limits on cross-examination to avoid harassment, prejudice, confusion, repetition, or irrelevant evidence." Id.

Here, the State did not use Hall's girlfriend's guilty plea to impeach her general credibility, but instead used it to show bias through evidence that Hall had previously attempted to accept responsibility for her criminal conduct in a different matter. When overruling Hall's objection, the trial court explicitly noted that the witness's first-offender status did not amount to a conviction and instructed the State to "be careful how you structure the questions." The trial court later sustained Hall's objection to and excluded the testimony of the prior crime's victim.

The trial court acted well within its discretion in allowing the State to explore whether Hall's previous attempt to accept responsibility for his girlfriend's criminal conduct may have influenced her trial testimony. See OCGA § 24-9-68("The state of a witness's feelings toward the parties and his relationship to them may always be proved for the consideration of the jury.")[2] ; *Melson v. State*, 263 Ga. App. 647, 648 (2) (588 SE2d 822) (2003) (holding that the trial court erred in failing to allow the defendant to cross-examine the victim as to her first offender status to show possible bias).

---

[2] This provision in substantially the same form is now contained in the new Evidence Code at OCGA § 24-6-622.

2. Hall contends that the trial court erred in charging the jury on more than one manner of committing aggravated assault when Hall had been indicted based upon one specific method of committing the crime. Specifically, the indictment alleged that Hall committed aggravated assault in that he committed an assault upon the female victim with "a deadly weapon." Over Hall's objection, the trial court instructed the jury that, "[a] person commits the offense of aggravated assault when that person assaults another person *with intent to murder or rob* or with a deadly weapon . . . ."[3] (Emphasis added.) See OCGA § 16-5-21 (b) (1), (2).

Under Georgia law, it is error for the trial court "to charge the jury that a crime may be committed by either of two methods, when the indictment charges it was committed by one specific method." (Citation and punctuation omitted.) *Childs v. State*, 257 Ga. 243, 253 (17) (357 SE2d 48) (1987). As conceded by the State, the trial court's definition of aggravated assault was overly broad given the indictment in this case.

Nevertheless, the trial court also read and provided to the jury the indictment, and instructed the jury that "[t]he burden of proof rests upon the State to prove every

---

[3] The trial court gave the aggravated assault charge twice, because the first time it inadvertently omitted the words "or rob."

7

material allegation of the indictment and every essential element of the crime charged beyond a reasonable doubt." This cured any error that the trial court committed in overcharging the jury. *See Flournoy v. State*, 294 Ga. 741, 744 (2) (755 SE2d 777) (2014) ("Even where a jury instruction is defective in that the trial court instructs the jury that an offense could be committed by other statutory methods than the one method charged in the indictment, . . . such a defect is cured [when] . . . the court provides the jury with the indictment and instructs jurors that the burden of proof rests upon the State to prove every material allegation of the indictment and every essential element of the crime charged beyond a reasonable doubt."); see also *Williams v. Kelley*, 291 Ga. 285, 286-87 (728 SE2d 666) (2012) (reversing the habeas court's grant of relief to defendant based upon trial court's overly broad charge on aggravated assault because the trial court also provided the jurors with the indictment and charged them on the State's burden of proof).

3. Hall next argues that the trial court erred in denying his motion to suppress the victims' pretrial photographic lineup identification and their subsequent in-court identification of him on the grounds that the identifications had been tainted by the allegedly suggestive nature of the photographic lineup. Specifically, he contends that

8

of the six men depicted in the lineup, he was the only one "pursing his lips" and not looking directly at the camera.

"[C]onvictions based on a pretrial identification by photograph and a subsequent identification at trial will be set aside only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." (Citation and punctuation omitted.) *Pinkins v. State*, 300 Ga. App. 17 (684 SE2d 275) (2009). To this end, "[a]n identification procedure becomes impermissibly suggestive when it leads the witness to an all but inevitable identification of the defendant as the perpetrator, or is the equivalent of the authorities telling the witness, 'This is our suspect.'" (Citation and punctuation omitted.) Id. "A court need not consider whether there was a substantial likelihood for misidentification if it finds that the identification procedure was not impermissibly suggestive." (Citation and punctuation omitted.) Id. at 17-18.

Here, each of the men in the lineup were the same race and approximate age as Hall, and had similar complexions, facial features, facial hair, and hairstyles. Although Hall's lips were slightly pursed and he was not looking into the camera, there was similar variance among the other men in this regard, i.e., at least one man was smiling and two men had their heads tilted at angles. Our review of the

9

photographic array contained in the appellate record fully supports the trial court's conclusion that the lineup procedure was not impermissibly suggestive. See *Buchanan v. State*, 273 Ga. App. 174, 178-79 (1) (a) (614 SE2d 786) (2005) (affirming trial court's holding that photographic array was not rendered impermissibly suggestive by "minor differences" such as appellant's wearing of a patterned shirt and canting his head to one side); *Daniels v. State*, 296 Ga. App. 795, 798-99 (4) (676 SE2d 13) (2009) (affirming the trial court's denial of appellant's motion to suppress a photographic lineup in which he was the only person depicted wearing a light-colored shirt).

Regardless, this is not a case in which there was a substantial likelihood of irreparable misidentification. See *Pinkins,* 300 Ga. App. at 17-18. The male victim was not only personally familiar with Hall, he relayed Hall's street name to law enforcement officials. Both victims viewed Hall's unobstructed face throughout the duration of the crime, and when shown the photographic array separately and approximately five hours after the crime, each victim "immediately" and "without hesitation" selected him as the perpetrator. The trial court did not err in allowing the identification evidence. See generally *Jackson v. State*, 288 Ga. App. 339, 345-46 (3) (654 SE2d 137) (2007).

10

4. Finally, Hall argues that his trial counsel was ineffective because counsel failed to call his girlfriend's mother to testify as an alibi witness. Hall's girlfriend testified at trial that on the day of the crime, she and Hall had been looking for jobs and had gone to her mother's office in order to print a job application.

In order to prevail on his claim of ineffective assistance, Hall "must establish both that his counsel's performance was deficient and that the deficient performance prejudiced his defense." (Citation omitted.) *Arellano v. State*, 304 Ga. App. 838, 840 (698 SE2d 362) (2010). "The test for prejudice is whether there is a reasonable probability that the outcome of the proceedings would have been different, but for counsel's deficiency." (Citation and punctuation omitted.) Id. Hall's claim fails if he is unable to satisfy either prong of this test. See id.

During the motion for new trial hearing, Hall's trial counsel testified that he did not call Hall's girlfriend's mother as a witness because, although she confirmed that she had printed job applications for Hall using her office computer, she could not remember the date or time that she had done so. Indeed, the witness herself testified at the hearing that she could not even remember if she had printed the applications during the same month that the crime had occurred. Hall's counsel testified that he

11

was concerned that the State would use the fact that his girlfriend's mother could not verify his whereabouts against Hall.

Counsel's failure to call an alibi witness who could not account for Hall's whereabouts on the day of the crime did not constitute deficient performance, nor is there a reasonable probability that it affected the outcome of the proceedings. See *Rogers v. State*, 271 Ga. App. 698, 700 (6) (610 SE2d 679) (2005) (recognizing that "the defense of alibi involves the impossibility of the accused's presence at the scene of the offense at the time of its commission"); *Todd v. State*, 275 Ga. App. 459, 463 (4) (620 SE2d 666) (2005) (affirming trial court's holding that counsel was not ineffective for failing to call alibi witnesses who could not reasonably exclude the possibility of defendant's presence at the scene of the crime). Moreover, counsel's fear that the witness may have actually hurt Hall's defense was a matter of reasonable trial strategy. See *Payne v. State,* 273 Ga. App. 483, 485 (2) (615 SE2d 564) (2005) ("Decisions regarding which defense witnesses to call are matters of trial strategy and tactics, and tactical errors do not constitute ineffective assistance of counsel."). It follows that the trial court did not err in denying Hall's motion for new trial based upon ineffective assistance of trial counsel.

*Judgment affirmed. Doyle, C. J., and Phipps, P. J., concur.*