**FIFTH DIVISION
MCFADDEN, P. J.,
BRANCH and BETHEL, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**October 19, 2017**

# In the Court of Appeals of Georgia

A17A1026. MCALLISTER v. THE STATE.

MCFADDEN, Presiding Judge.

A jury found Monty McAllister guilty of aggravated stalking and criminal trespass. The trial court imposed a ten-year sentence for the aggravated stalking and a concurrent twelve-month sentence for the trespass. McAllister moved for a new trial, which the trial court denied. McAllister appeals, arguing that there was insufficient evidence supporting the aggravated stalking conviction, that the trial court committed plain error in re-charging the jury on aggravated stalking, and that his trial counsel was ineffective. However, there was enough evidence from which the jury was authorized to find McAllister guilty beyond a reasonable doubt of aggravated stalking, the trial court did not commit plain error in re-charging the jury on the statutory definition of aggravated stalking, and McAllister has failed to show

that his trial counsel's performance was both deficient and prejudicial. Accordingly, we affirm.

1. *Sufficiency of the evidence.*

McAllister challenges the sufficiency of the evidence supporting his aggravated stalking conviction. The challenge is without merit.

> The applicable standard of review directs that when reviewing a defendant's challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence. We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.

*Thompson v. State*, 341 Ga. App. 883, 884 (1) (802 SE2d 713) (2017) (citation and punctuation omitted).

So viewed, the evidence shows that on April 16, 2011, the victim reported to police that McAllister, her former boyfriend, was harassing her. An officer responded to the call and while he was with the victim at her apartment, McAllister called the victim on her cell phone. The officer asked the victim for her phone, he told McAllister that he had witnessed the victim telling him to leave her alone, and he told McAllister not to come to the victim's apartment. Early the next morning, the officer received a call that McAllister was at the victim's apartment complex and was

2

preventing her from leaving in her car. The officer went to the complex and saw McAllister standing on the driver's side of the victim's car beating on the roof of the car. The officer arrested McAllister for criminal trespass. The following day, April 18, 2011, McAllister was released from jail on bond, with the bond order including a special condition that McAllister have no contact with the victim. The no-contact condition of the bond order provided:

> That as a condition of permitting the Defendant to post said bond, the Defendant shall not . . . have any further contact, directly or indirectly, by person, telephone, computer, through a third party or any other means of communication with the victim. . . . That includes but is not limited to, at the victim's residence, workplace, school, and place of childcare or other location. **Violations connected with contacting or following the victim may subject the Defendant to a separate prosecution for Aggravated Stalking**. (Emphasis in original.)

Several months later, on January 16, 2012, McAllister contacted the victim twice: he sent her a text message and he also talked to her on the phone, insisting that "he really needed to see her." The next morning, on January 17, McAllister drove to the victim's apartment complex; entered her apartment, setting off the security alarm; ripped the alarm off the wall and knocked a picture off the wall; went into the victim's bedroom; and kissed the victim. A police officer responded to the alarm call at the apartment, where he found the victim appearing scared and in shock at the door.

3

The victim whispered to the officer that there was a man in her bedroom, that he was her ex-boyfriend, and that she had not invited him to come to her apartment. When the officer entered the apartment, he found the broken security alarm ripped from the wall, the picture knocked to the floor, and McAllister lying in the victim's bed. Inside McAllister's car, which was parked outside the victim's apartment, officers later found, among other things, plastic restraints, duct tape, and a box cutter.

In challenging the sufficiency of the evidence supporting his aggravated stalking conviction, McAllister relies on *State v. Burke*, 287 Ga. 377 (695 SE2d 649) (2010), which held that "a single violation of a protective order, *by itself*, does not amount to aggravated stalking." Id. at 378 (footnote omitted; emphasis supplied). In *Burke*, the Georgia Supreme Court further held that evidence of prior difficulties between the defendant and the victim could not be used to establish the aggravated stalking element of a pattern of harassing and intimidating behavior because the jury had been instructed that such prior difficulties could be considered only for the limited purposes of showing the state of feeling between the defendant and the victim and the bent of mind and course of conduct of the accused, and that such evidence could not be considered for any other purpose. Id. at 377-378.

McAllister argues that because the jury in the instant case was given a similar limiting instruction regarding the purpose of prior difficulties evidence, the jury was not authorized to consider his prior incident with the victim in April 2011 as evidence of a pattern of harassing and intimidating behavior. And without such evidence of the April 2011 incident, he reasons, there was only evidence of a single violation of the no-contact bond provision – when he made contact with the victim at her apartment on January 17, 2012 – which by itself was insufficient to support his aggravated stalking conviction.

However, contrary to McAllister's claim, the instant case is materially different from *Burke*, in which the "entire case hinged on the theory that a single violation of a protective order, in and of itself, was sufficient to establish the crime of aggravated stalking." Id. at 378. In this case, there was evidence of more than a single violation of the no-contact bond order which was sufficient to establish the crime of aggravated stalking. Even assuming, without deciding, that the jury was not authorized to consider evidence of the April 2011 incident as part of a pattern of harassing and intimidating behavior, there was other evidence from which the jury could have found such a pattern of behavior. As recounted above, the day before McAllister entered the victim's apartment, he violated the no-contact order twice by calling the victim and

5

by sending her a text message. The jury was authorized to conclude that those acts of improper contact, along with the facts that when McAllister entered the victim's apartment he ripped the alarm off the wall, knocked a painting to the floor, and kissed the victim, constituted a pattern of harassing and intimidating behavior.

Although a single violation of a protective order, *by itself*, does not constitute aggravated stalking, see *Burke*, supra at 378, our Supreme Court has further explained that "of course one act of violating a protective order, *when done as part of a pattern of harassing and intimidating behavior*, can constitute the crime of aggravated stalking." *State v. Cusack*, 296 Ga. 534, 537-538 (769 SE2d 370) (2015) (citations omitted; emphasis supplied). See also *Daker v. Williams*, 279 Ga. 782, 785 (621 SE2d 449) (2005) (two related instances of stalking behavior occurring within the space of a single week evinced a pattern of prohibited behavior criminalized by the stalking statutes). Accordingly, because there was evidence from which the jury was authorized to find that McAllister's violation of the no-contact order by going to the victim's apartment was done as part of a pattern of harassing and intimidating behavior over a two-day period, there was sufficient evidence supporting his aggravated stalking conviction.

2. *Recharge on aggravated stalking*.

During deliberations, the jurors sent a note to the judge asking to be given a "full description" of OCGA § 16-5-91, the aggravated stalking statute . In response, the judge read to the jury all of OCGA § 16-5-91 (a), which provides:

> A person commits the offense of aggravated stalking when such person, in violation of a bond to keep the peace posted pursuant to Code Section 17-6-110, temporary restraining order, temporary protective order, permanent restraining order, permanent protective order, preliminary injunction, good behavior bond, or permanent injunction or condition of pretrial release, condition of probation, or condition of parole in effect prohibiting the behavior described in this subsection, follows, places under surveillance, or contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person.

However, during the recharge, the judge misread the final portion of the statute by stating that a person commits aggravated stalking when such person, in violation of the various types of orders set forth in the statute, "follows, places under surveillance, *contact of other person or other places* without the consent of the person for the purpose of harassing and intimidating of the other person." (Emphasis supplied.) McAllister did not object to the recharge.

McAllister now contends that the recharge erroneously permitted the jury to find him guilty of aggravated stalking based on a manner not alleged in the indictment. Specifically, he claims that while the indictment alleged that he

7

committed aggravated stalking by having unlawful contact with the victim, the portion of the recharge emphasized above erroneously instructed the jury that the crime could also be committed by him having had unlawful contact with a place – i.e., breaking the security alarm inside the victim's apartment.

Because McAllister did not object to the jury recharge at trial, we review the charge for plain error, which "will only be found if the jury instruction was erroneous; the error was obvious; the instruction likely affected the outcome of the proceedings; and the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Bradley v. State*, __ Ga. App. ___ (1) (Case No. A17A0668, decided August 4, 2017) (citation and punctuation omitted). While the trial court misread a portion of the aggravated stalking statute, the instruction did not likely affect the outcome of the trial and the misreading did not seriously affect the fairness or integrity of the proceedings. During the recharge, in addition to reading the statute, the trial court reminded the jury that the pertinent part of the statute was excerpted in count two of the indictment, which charged aggravated stalking by unlawful contact with the victim. Moreover, the court also clearly explained during the recharge that the state's allegation was that McAllister had violated the condition of the bond order that he "have no contact with the alleged victim[.]" Under these circumstances, we

8

find no likelihood that the recharge led the jury to believe that it could find guilt based on contact with a place, rather than unlawful contact with the victim. See *Jones v. State*, 310 Ga. App. 705, 710 (c) (713 SE2d 895) (2011) ("charge as given was not likely to mislead the jury into believing it could convict [the defendant] should they find the evidence supported a form of aggravated stalking not specified in the indictment").

3. *Ineffective assistance of counsel.*

McAllister claims that his trial counsel was ineffective in failing to object to a detective's hearsay testimony that the victim told her that McAllister was not supposed to be at her apartment and that she was terrified of him, and in failing to introduce evidence that the state had dismissed the April 2011 criminal trespass charge by nolle prosequi. To prevail on these claims, McAllister "must show both that his counsel's performance was deficient and that the deficient performance so prejudiced him that, but for the deficiency, there is a reasonable probability that the outcome of the trial would have been different." *Daniel v. State*, 338 Ga. App. 389, 392 (3) (787 SE2d 281) (2016) (citations omitted). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Cushenberry v. State*, 300 Ga. 190, 197 (3) (794 SE2d 165)

9

(2016) (citations and punctuation omitted). McAllister has failed to make the required showings.

(a) *Hearsay.*

The detective's testimony about the statements made by the victim was cumulative of other admissible evidence showing that the victim was scared of McAllister and that he was not supposed to be at her apartment. In addition to the evidence showing that there was a no-contact bond order prohibiting McAllister from going to the victim's apartment, that he had repeatedly violated that order, and that he had ripped the security alarm off the wall of the victim's apartment, the officer who responded to the emergency alarm call testified that the victim was scared and in shock. Moreover, the trial court also allowed the responding officer to testify about what the victim had told him when he arrived at the scene, including her statement that she had not asked McAllister to come to her apartment, as such statements were made to help the officer meet the ongoing emergency of apprehending an intruder in the victim's home. See *Milford v. State*, 291 Ga. 347, 348-349 (2) (729 SE2d 352) (2012) (trial court did not err in admitting victim's statements made to responding officer at the scene as the statements, which were made to meet the ongoing emergency of apprehending armed defendants, were non-testimonial). In addition, the

jury was instructed that the evidence of prior difficulties between McAllister and the victim was admitted for the purposes of illustrating "the state of feelings between the defendant and the alleged victim and the reasonableness of any fears by . . . the alleged victim."

Consequently, even assuming that the lack of an objection to the detective's testimony was deficient, there is no reasonable probability that the outcome of the trial would have differed had counsel made such an objection.

> As the admission of cumulative hearsay evidence is considered harmless error, a defendant cannot show a reasonable probability that, but for trial counsel's failure to object to such evidence, the outcome of the trial would have been different. Therefore, trial counsel's failure to object to [the detective's] testimony did not amount to ineffective assistance, and we find no error in the trial court's rejection of [this] ineffectiveness claim.

*Lee v. State*, 316 Ga. App. 227, 233 (2) (728 SE2d 847) (2012) (citation omitted).

(b) *Nolle prosequi.*

McAllister cites *Beck v. State*, 250 Ga. App. 654, 661 (6) (551 SE2d 68) (2001) for the proposition that trial counsel was deficient in failing to introduce evidence that the April 2011 criminal trespass charge was dismissed by nolle prosequi prior to the trial in the instant case. But his reliance on *Beck* is misplaced. It is true that *Beck* noted that in the case of *Jones v. State*, 159 Ga. App. 634 (284 SE2d 651) (1981),

11

"this [c]ourt ruled that evidence that defendant was *acquitted* in a prior case was admissible when the [s]tate introduced evidence of the prior case through a similar transaction witness." *Beck*, supra at 661 (6) (citation omitted). However, the instant case did not involve an acquittal of the earlier trespass charge, so *Beck* does not mandate a finding that evidence of the state's decision not to prosecute that charge would have been admissible in this case.

Nevertheless, even if we assume that such evidence might have been admissible, there is no reasonable probability that the outcome of the trial would have been different if such evidence had been introduced. It is undisputed that the no-contact bond order underlying the aggravated stalking charge in this case was in effect at the time McAllister improperly went to the victim's apartment in January 2012. Thus, the fact that the state dismissed the earlier 2011 trespass charge prior to trial had no bearing on the validity of that charge or the current trespass charge, which was based on the damage to the security alarm in the victim's apartment. Accordingly, the trial court did not err in denying the ineffectiveness claim on this ground.

*Judgment affirmed. Branch and Bethel, JJ., concur.*