**SECOND DIVISION**
**MARKLE,**
**LAND and DAVIS, JJ.**

**NOTICE:** **Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 4, 2025**

# In the Court of Appeals of Georgia

A24A1835. SMERK v. THE STATE.

LAND, Judge.

After a jury trial, Collin Smerk was convicted of several counts each of child molestation and sexual exploitation of children as well as one count of invasion of privacy. He appeals from the denial of his motion for new trial. On appeal, Smerk argues that his trial counsel rendered ineffective assistance by failing to file a motion to suppress the results of a search of his residence and his vehicle. He also argues that the trial court's jury instruction defining "sexual conduct" was not tailored to the indictment and that his sentence was excessive under the rule of lenity. For the following reasons, we affirm.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence." *Reese v. State*, 270 Ga. App. 522, 523 (607 SE2d 165) (2004). We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether, after viewing the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis omitted.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (99 SCt 2781, 61 LE2d 560) (1979).

So viewed, the record shows that Smerk married Alicia Jones when her daughter, E. J., was 3 years old. E. J. lived with her mother and Smerk in Cherokee County until she moved to Florida to live with her biological father when she was nine years old. After her move, E. J. would visit her mother and Smerk in Cherokee County on weekends, holidays, and summer break. When E. J. became a teenager, Smerk would frequently ask her to watch movies with him in the basement and would engage in inappropriate conversations with her about his high school sex life. Smerk frequently told E. J. that he did not want her to be "unprepared" for sex when she went to college.

One evening, when E. J. was 15 years old, Smerk offered to give her a massage. E. J. accepted, but Smerk continued his massage up her legs until he rubbed her buttocks under her underwear. Soon after, Smerk began discussing masturbation with E. J. and would give her sex toys and instruct her to go to the basement bathroom and use them. E. J. testified that she believed Smerk was watching or filming her in the bathroom because he would know when she was not following his instructions despite the fact that she was behind closed doors. Smerk later gave E. J. a larger sex toy that he insisted she use. E. J. testified that when she was 15 or 16 years old, Smerk would tell E. J. to touch herself while they watched a movie in the basement and would force her to watch him while he masturbated. This happened twenty to thirty times.

When she was 17 years old, E. J. made an outcry to her boyfriend while she was staying with her father in Florida. The boyfriend encouraged her to tell her father and step-mom about the abuse. The father then contacted the police in Florida. E. J. was interviewed by the police in Florida, who then contacted the Cherokee County Sheriff's Office. After watching E. J.'s forensic interview, Detective Scott Duncan with the Cherokee County Sheriff's Office found that there was probable cause to obtain a search warrant of Smerk's home to search for any items that would

3

corroborate E. J.'s story, including videos or images found on any electronic equipment. The search warrant application alleged that E. J. "believes that she was recorded while do [sic] the acts [Smerk] requested" because he "used to own an audio-visual store" and because Smerk knew details about a game she played with her sister behind closed doors in her bedroom and he would know when she was not using the sex toy as he directed when she was in the bathroom. The warrant authorized the seizure of any sex toys as well as "[a]ny and all computers, not limited to Laptops, Tablets, Desktops," and cell phones as well as any devices – including cameras, hard drives, thumb drives and SD cards — that could store video or audio data. It also authorized officers to review the data contained on any of these devices for evidence of sexual exploitation of children.

No one was at Smerk's house when officers arrived at the home to execute the search warrant, but the garage door was open and the door into the interior was unlocked. The officers entered and searched the home while the residents were away. Although the home was very cluttered and "hoarder-like," the officers found and seized a large number of electronics and sex toys. The officers found one of the sex

toys described by E. J. in the basement bathroom. Officers took photos of each of these items from where they were removed.

A review of the data on the seized electronics revealed many files saved in a folder titled "for Collin's eyes only." These files showed that Smerk had photos of young girls and toddlers being sexually abused. The files also showed that Smerk had previously taken hidden camera bathroom videos of others, including of his sister in the shower. Officers also found DVDs from 2005 labeled "for Collin's eyes only" containing more child pornography. A review of the photos taken by an officer in the basement bathroom showed evidence that a hidden home security camera had been installed in the basement bathroom. Police also seized computer text files containing fictional stories written by Smerk describing incestuous child molestation. These stories were introduced at trial.

After law enforcement viewed the digital and physical evidence removed from the home, they obtained an arrest warrant for Smerk. Smerk was pulled over while driving his car and arrested. As he was being arrested, Smerk asked to keep the cellphone and laptops that were found in the car. Officers declined, and then obtained

a search warrant for his vehicle. The search of Smerk's car revealed a small home security camera on the passenger seat that was similar to the one photographed in the basement bathroom during the initial search. The camera did not contain an SD card. The camera was used at trial in support of the invasion-of-privacy charge. Officers also found two laptops, two jump drives, and a cell phone.

Smerk was charged with child molestation by touching E. J.'s buttocks (Count 1), child molestation by masturbating in front of E. J. (Count 2), enticing her into the basement to molest her (Count 3), possession of child pornography videos (Counts 4-7), and invasion of his sister's privacy by filming her showering (Count 8). Prior to trial, the State moved to admit the fictional stories written by Smerk as evidence of specific sexual intent. A hearing was held, and the trial court allowed the stories to be admitted.

Trial counsel did not file a motion to suppress the results of either search warrant. After a jury trial, Smerk was convicted on all counts. The trial court denied his motion for a new trial.

1. In several enumerations, Smerk argues that his trial counsel rendered ineffective assistance of counsel in failing to challenge the searches of his home and vehicle.

To succeed on this claim, Smerk "bears the burden of showing both that trial counsel's performance was deficient and that he suffered prejudice as a result." *Pugh v. State*, 318 Ga. 706, 720 (2) (d) (899 SE2d 653) (2024), citing *Strickland v. Washington*, 466 U. S. 668, 687 (104 S.Ct. 2052, 80 LE2d 674) (1984).

> To establish deficient performance, [Smerk] must show that his counsel performed his duties in an objectively unreasonable way. To eliminate the distorting effects of hindsight, we must consider [Smerk's] claim in light of counsel's perspective at the time and indulge a strong presumption that counsel's performance was reasonable. [Smerk] bears the burden of overcoming this presumption by showing that no reasonable lawyer would have done what his lawyer did, or would have failed to do what his lawyer did not. To establish prejudice, [Smerk] must show a reasonable probability that, but for counsel's deficient performance, the result at trial would have been different.

(Citation and punctuation omitted.) *Pugh*, 318 Ga. at 720 (2) (d).

It is "axiomatic that the failure to file a motion to suppress does not automatically constitute ineffective assistance of counsel." *State v. Walker*, 350 Ga.

App. 168, 173 (2) (828 SE2d 402) (2019). Rather, the defendant bears "the burden of making a strong showing in the trial court that the evidence would have been suppressed had a motion to suppress been filed. This is because it is not ineffective assistance of counsel to refrain from making a futile motion or filing a meritless motion to suppress." (Punctuation and footnote omitted.) Id. at 173 (2). In determining whether the defendant has carried this burden, the standard is whether a motion to suppress on the specific basis proposed by the defendant would "clearly have succeeded" if trial counsel had raised it. *Ward v. State*, 313 Ga. 265, 275 (4) (b) (869 SE2d 470) (2022).

(a) *Warrant and Search of the Home.* Smerk argues that his trial counsel rendered ineffective assistance by failing to file a motion to suppress evidence obtained as a result of the search of his home. Smerk argues that the search warrant for his home was invalid because it authorized an impermissible general search. We find no error.

OCGA § 17-5-21 (a) (1) allows a judicial officer to issue a search warrant for the seizure of any "instruments, articles, or things, including the private papers of any person, which are designed, intended for use, or which have been used in the commission of the offense with which the warrant is issued[.]" However, the "4th

8

Amendment to the United States Constitution and Article I, § 1, Paragraph XIII of Georgia's Constitution require that a search warrant particularly describe the article or articles sought." *Dobbins v. State*, 262 Ga. 161, 164 (3) (415 SE2d 168) (1992). "In addition to requiring that officers have enough guidance to locate and seize only those items the warrant authorizes them to seize, this particularity requirement also prevents general searches – that general, exploratory rummaging in a person's belongings by the government that has been rejected since the founding as a violation of fundamental rights." (Citation and punctuation omitted.) *State v. McElroy*, 372 Ga. App. 124, 126 (2) (903 SE2d 783) (2024). Although "the degree of the description's specificity is flexible and will vary with the circumstances involved, it cannot leave the determination of what articles fall within the warrant's description and are to be seized entirely to the judgment and opinion of the officer executing the warrant." *Dobbins*, 262 Ga. at 164 (3).

Here, the swearing officer completed a sworn affidavit and submitted it to the magistrate in support of the search warrant application. The affidavit stated that during a forensic interview, the victim described her belief that Smerk secretly recorded her when playing with her sister behind closed doors in her bedroom as well

as when he instructed her to "touch herself" with sex toys that he provided for her. The officer averred that, based upon this interview, "[i]t is my belief that [Smerk] has recorded audio and or video of [E. J.] performing sexual acts at the request of her stepfather." The affidavit recited that this pattern of abuse occurred between May 2017 and August 2018.

The magistrate subsequently issued a warrant that authorized a search of Smerk's house for any device or cameras "that can or would be able to store electronic data or video[,]" such as "[a]ny and all computers[,]" "cellular phones found in the residence or possession of Collin Smerk," any "data from the cellular phones to include texts, both SMS and MMS, location data, ownership, video, photographs, instant message data and all applications," and any "and all data from the hard drives both external and internal, thumb drives, and SD cards" that could be used as evidence in connection with the crime of sexual exploitation of a minor. The warrant further included preprinted form language limiting the search and seizure of these items to that "which is evidence that a crime has been or is being committed, to wit: [OCGA §] 16-12-100 Sexual Exploitation of a Minor." See OCGA § 16-12-100 (b) (8) ("[i]t is unlawful for any person knowingly to possess or control a material which

depicts a minor or a portion of a minor's body engaged in any sexually explicit conduct").

Smerk correctly argues that the warrant authorizes officers to search for and seize a generalized class of electronic information. However, because of the hidden nature of the suspected recording, E. J. was not aware of what kind of device Smerk used to record her or the means by which he may have retained those recordings. Thus, it was sufficient for the warrant to describe generic classes of items — any device that could store or transmit electronic data – that would prove Smerk's involvement with the offense of sexual exploitation of a minor. "When circumstances make an exact description of instrumentalities. . . a virtual impossibility, the searching officer can only be expected to describe the generic class of items he is seeking." (Citation and punctuation omitted.) *Tyler v. State*, 176 Ga. App. 96, 97 (1) (335 SE2d 691) (1985). Further, the search warrant "enumerated each class of item seized from the [house]" and the language at the end of the warrant limited those enumerated classes of evidence to only that which is "potentially relevant to the crime being investigated." *Palmer v. State*, 310 Ga. 668, 675 (2) (c) (853 SE2d 650) (2021) (warrant authorizing the search and seizure of "any fingerprints, any and all firearms

. . . cell phones (to include all data contained therein), currency. . . and DNA" was sufficient because the warrant enumerated each class of item seized from defendant's apartment and the classes enumerated were potentially relevant to the crime being investigated). See also *State v. Wilson*, 315 Ga. 613, 620 (884 SE2d 298) (2023) (Peterson, J., concurring) (the language at the end of the warrant limiting the evidence to be seized to that pertaining to the crime of sexual exploitation of children "modifies the rest of the list") (emphasis omitted); *Leili v. State*, 307 Ga. 339, 350 (4), n. 6 (834 SE2d 847) (2019) (the warrant's broad language authorized seizure of "all electronic devices" for "tangible evidence of the commission of the crime of felony murder" was sufficient because this language authorized officers to only "search for and seize evidence relevant to the crime identified in the warrant").

The circumstances of this case demonstrate the relevance of a wide array of electronic recording and data storage devices, and "read in a common sense fashion and in the context of the list of items and the [modifying] clause, the [warrant] limiting items to be seized to data relevant to the offense of [sexual exploitation of a minor] had sufficient specificity, satisfying the particularity requirement of the Fourth Amendment." (Punctuation and footnote omitted.) *State v. Black*, 370 Ga. App. 18,

27 (2) (893 SE2d 517) (2023). In sum, "police knew what they were searching for, why it was connected to the alleged offense, and what time period in which to look." Id. See also *McElroy*, 372 Ga. App. at 126-127 (2) (search warrant and testimony of swearing officer met the particularity requirement of the Fourth Amendment when it sought to seize the defendant's cell phone and any video present on the device when the affidavit and officer testimony showed that minor child made an outcry that defendant filmed himself performing oral sex on the child with a cell phone).

Based upon the above, Smerk has failed to make the required "strong showing that the damaging evidence would have been suppressed." (Citation omitted.) *Pugh*, 318 Ga. at 722 (2) (d). Further, his trial counsel testified at the motion for new trial hearing that his failure to object to the search warrant was strategic because his "theory of the case" was that Smerk "didn't commit the offenses, that he didn't know that these [videos] were there or have any idea that they were there" and that they could have belonged to other people who lived in the house. The trial court did not err in denying his motion for ineffective assistance on this ground.

(b) *Warrant and Search of the Car.* Smerk argues that his trial counsel rendered ineffective assistance of counsel for failing to file a motion to suppress the evidence obtained as a result of the search of his car. We find no error.

The swearing officer completed a sworn affidavit reiterating E. J.'s allegations of abuse and her belief that Smerk had recorded her during private moments. The affidavit also stated that E. J.'s mother told an officer during an interview after his arrest that she had confronted Smerk for filming guests in their basement bathroom in the past and that he had expressed a sexual interest in E. J.'s body in the past. It also stated that after the execution of the initial search warrant of Smerk's house, an arrest warrant was issued and he was arrested while driving his vehicle. At the time of his arrest, Smerk asked for his laptops and cellular phones that were located in his car, and the officers denied his request. The affidavit then asked the magistrate to issue a warrant "to seize any cellular phones and laptop computers from the 2009 Silver Malibu" driven by Smerk at the time of his arrest. A video camera was discovered in plain view on the passenger seat during the execution of the search warrant, and it was admitted at trial.

Although the warrant issued by the magistrate identifies the item to be searched and seized as the "Car Chevy Malibu Silver in color," the warrant limits items to be seized to those that could be "evidence that a crime has been or is being committed, to wit: [OCGA §] 16-12-100 (b) (5) Sexual Exploitation of Children." Thus, the search warrant and affidavit, when taken together, "sufficiently limited the scope of the search" to Smerk's cell phone and laptop to determine if they contained evidence of sexual exploitation of children. *McElroy*, 372 Ga. App. at 127 (2). Further, the evidence is undisputed that the video camera that was seized was in plain sight of the officers at the time of Smerk's arrest. See *Reaves v. State*, 284 Ga. 236, 237 (1) (b) (664 SE2d 207) (2008) ("[I]tems of obvious evidentiary value discovered in plain view during the execution" of a search warrant are admissible).

Because Smerk has not made a "strong showing that the damaging evidence would have been suppressed had counsel made the motion," we affirm the trial court's denial of the claim of ineffective assistance on this ground. (Citation omitted.) *Pugh*, 318 Ga. at 720 (2) (d).

2. Smerk argues that the trial court erred in charging the jury on an overbroad definition of "sexual conduct" for purposes of proving sexual exploitation of children

15

and that this charge was not tailored to the indictment or the facts of the case. We find no plain error.

Counts 4-7 of the indictment alleged that Smerk committed sexual exploitation of children when he knowingly possessed a video depicting "a minor's body engaged in sexually explicit conduct, to wit: sexual intercourse between a adult male and minor female." The trial court instructed the jury that it would "give you the definition of each offense charged in this indictment." Specifically,

> for counts 4, 5, 6 and 7, I charge you as follows. A person commits the offense of sexual exploitation of children when he knowingly possesses or controls any material including digital photographs which depicts a minor or a portion of a minor's body engaged in any sexually explicit conduct. That's a defined term. . . Sexually explicit conduct . . . means actual or simulated sexual intercourse, including genital/genital or oral/genital, lewd exhibition of the genitals or pubic area of any person, physical conduct in an act of apparent sexual simulation or gratification with any person's unclothed genitals, [and] penetration of the vagina by any object except when done as part of a recognized medical procedure.

The jury instruction was not objected to by Smerk's counsel.

Smerk argues that although the trial court's jury instruction provides an accurate reading of OCGA § 16-12-100 (b), defining sexual exploitation of children,

16

it was not tailored to the indictment because it allowed for multiple kinds of sexually explicit conduct when the indictment alleged only sexual intercourse between a male and a minor female. See *Childs v. State,* 257 Ga. 243, 253 (17) (357 SE2d 48) (1987) (under Georgia law, it is error for the trial court "to charge the jury that a crime may be committed by either of two methods, when the indictment charges it was committed by one specific method") (citation and punctuation omitted).

Because Smerk did not object to the jury instruction at trial, we review the charge for plain error, which "will only be found if the jury instruction was erroneous; the error was obvious; the instruction likely affected the outcome of the proceedings; and the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." (Citation and punctuation omitted.) *McAllister v. State*, 343 Ga. App. 213, 217 (2) (807 SE2d 14) (2017). Although the trial court did expand the definition of sexually explicit conduct beyond what was alleged in the indictment, the instruction did not likely affect the outcome of the trial or seriously affect the fairness or integrity of the proceedings. The trial court provided the jury with a copy of the indictment and instructed the jury "the burden of proof is always upon the State of Georgia" in criminal cases and that the State "must produce sufficient evidence to prove each

essential element of each offense" beyond a reasonable doubt. It further charged the jury that they were authorized to find Smerk guilty only if they found "beyond a reasonable doubt that [Smerk] did commit the offenses alleged in this indictment." "This cured any error that the trial court committed in overcharging the jury." *Hall v. State,* 335 Ga. App. 895, 898 (2) (783 SE2d 400) (2016). See also *Flournoy v. State,* 294 Ga. 741, 744 (2) (755 SE2d 777) (2014) (even when jury instruction is defective because it instructs the jury that an offense could be committed by other statutory methods than that charged in the indictment, such defect is cured when "the court provides the jury with the indictment and instructs jurors that the burden rests upon the State to prove every material allegation of the indictment and every essential element of the crime charged beyond a reasonable doubt") (citation and punctuation omitted). Under these circumstances, there was no plain error.

4. Smerk argues that his sentence on Count 1 for child molestation arising from his touching of E. J.'s buttocks was improper because he was entitled to the benefit of the rule of lenity. However, this claim of error is waived because Smerk raises it for the first time on appeal. See *Adams v. State*, 298 Ga. App. 518, 519 (3) (680 SE2d 429)

(2009) (defendant waived claim that trial court erred in failing to apply the rule of lenity where defendant raised the claim for the first time on appeal).

*Judgment affirmed. Markle, J. and Davis, J., concur.*